**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee*,

v.

QUEEN ANIEZE-SMITH,
　　　　　*Defendant-Appellant.*

No. 16-50208

D.C. No.
2:13-cr-00220-
DMG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted February 4, 2019
Pasadena, California

Filed May 2, 2019

Before: Ronald M. Gould and Jacqueline H. Nguyen,
Circuit Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable Roger T. Benitez, United States District Judge for
the Southern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a restitution order in a case in which the defendant was convicted on five counts of health care fraud.

Rejecting the defendant's challenges to the sufficiency of the evidence supporting the restitution order, the panel held that the district court did not clearly err by finding that each of the power wheelchair claims that the defendant and her co-defendant filed to Medicare was fraudulent, or by finding that the defendant directly harmed the victim.

The panel rejected as foreclosed by case law the defendant's contention that the restitution order must be limited to the losses traceable to the five executions of the fraudulent scheme on which she was indicted and convicted. The panel explained that because an element of health care fraud is a scheme or pattern of criminal conduct (18 U.S.C. § 1347(a)), the Mandatory Victims Restitution Act of 1996 (MVRA) permits the district court to base restitution on related but uncharged conduct that was part of the defendant's fraud scheme.

On an issue of first impression in this circuit, the panel held that the MVRA authorizes district courts to impose restitution to all victims for the losses they suffered from the defendant's conduct throughout the course of the fraudulent scheme, even where such losses were in part caused by

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conduct outside the statute of limitations. Applying that rule to this case, the panel concluded there was no plain error in the district court's restitution order.

The panel addressed other issues raised by the defendant and her co-defendant in a simultaneously filed memorandum disposition.

## COUNSEL

Kathryn Ann Young (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; Richard Wayne Raynor (argued), Law Office of Richard W. Raynor, Redondo Beach, California; for Defendants-Appellants.

Joseph D. Axelrad (argued) and Cathy J. Ostiller, Assistant United States Attorneys; Lawrence S. Middleton, Chief, Criminal Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

GOULD, Circuit Judge:

Defendant-Appellant Queen Anieze-Smith was tried and convicted on five counts of health care fraud in violation of 18 U.S.C. § 1347.  The district court sentenced Anieze-Smith to five years' probation and ordered her to pay in restitution $814,445.95, the full amount of Medicare's losses from the fraudulent healthcare scheme.  Anieze-Smith appeals, claiming, among other things, that the restitution order unlawfully includes losses resulting from conduct occurring outside the statute of limitations.  We affirm.[1]

**I**

Anieze-Smith and her co-defendant, Abdul King Garba, owned and operated International Trade & Consulting, LLC ("ITC"), a durable medical equipment ("DME") supply company located in Van Nuys, California.  ITC was a registered Medicare provider, which allowed the company to provide durable medical equipment to Medicare beneficiaries and submit claims to Medicare for reimbursement. Between 2006 and 2009, Anieze-Smith and Garba submitted $1,890,433.82 in reimbursement claims to Medicare, and Medicare paid $897,726.91 on the claims. The claims submitted to Medicare were almost exclusively for power wheelchairs.

On April 5, 2013, a federal grand jury returned an indictment charging Anieze-Smith and Garba with seven counts of health care fraud.  The gravamen of the indictment

---

[1] In a separate memorandum disposition filed simultaneously with this opinion, we affirm against all other issues raised by Anieze-Smith and her co-defendant Abdul King Garba.

alleged that Anieze-Smith and Garba fraudulently billed Medicare for medically unnecessary power wheelchairs. DME suppliers may only submit claims for equipment that a physician has certified to be medically necessary and for which requisite paperwork is on file documenting the necessity. A power wheelchair is not medically necessary unless the patient cannot complete activities of daily living without the use of the power wheelchair. If a lesser device, such as a walker or manual wheelchair, will suffice, then the power wheelchair is not medically necessary. This limitation helps to ensure that Medicare's limited funds are not used absent medical necessity. DME suppliers must also conduct a home assessment before delivering the power wheelchair to the beneficiary to ensure that the power wheelchair can be used effectively within the home. The indictment alleged that, between January 10, 2006, and September 15, 2009, ITC submitted to Medicare fraudulent claims totaling approximately $1,890,433 for DME that was not medically necessary, and that was sometimes never provided. Before trial, the government moved to dismiss counts six and seven, and the district court granted the motion.

At trial, the government introduced expert testimony to explain how fraudulent schemes operate. A government expert testified that fraudulent Medicare billing schemes usually originate with "recruiters," who approach vulnerable beneficiaries and convince them to obtain DME, such as power wheelchairs, through Medicare. The recruiters then bring the beneficiaries to "compromised clinics" where doctors or physician assistants prescribe medically unnecessary equipment. Finally, fraudulent DME suppliers may even obtain the prescription without the beneficiary's involvement—often by paying cash for the prescription to the clinic or the recruiter. The DME supplier then bills

Medicare for a "blue ribbon package" of a power wheelchair and accessories to maximize reimbursement. Fraudulent DME suppliers may bill Medicare before delivery of the power wheelchair or deliver the power wheelchair without the proper home assessment.

The special agent who investigated the case testified about the strong indications of fraud in ITC's operations. He explained that the bulk of ITC's patient referrals came from compromised clinics, that kickbacks are usually paid in cash, and that ITC's bank account showed large cash withdrawals that were not attributable to legitimate business expenses. Many of ITC's patient files were missing prescriptions or other documentation of medical necessity, and many others contained identical physician progress notes accompanying prescriptions for power wheelchairs, including some patient files with the same progress notes written by the same doctor on the same day. Twenty-two of the claims submitted to Medicare for reimbursement represented instances where the same power wheelchair was prescribed to both a husband and a wife, often by the same doctor on the same day.

Of the 229 power wheelchairs ITC billed to Medicare during the course of the scheme, nearly all of them included a full package of accessories. ITC's patient records showed that two power wheelchairs were billed to Medicare and three were delivered to the beneficiary before the power wheelchair was prescribed. An additional 46 claims were billed before the power wheelchair was delivered to the beneficiary. Moreover, ITC billed Medicare for about 25 more power wheelchairs than it purchased.

Following a ten-day trial, a jury convicted Anieze-Smith and Garba on all five counts charged. Before sentencing, the probation officer prepared a presentence investigation report (the "PSR"). The PSR described the entire fraudulent

scheme, from January 2006 to September 2009, and concluded that the total loss to Medicare was $897,726.91. The probation officer applied a 16-level sentencing enhancement for intended losses of more than $1,500,000 because the defendants billed $1,890,433.82 to Medicare. *See* U.S.S.G. § 2B1.1(b)(1)(I). The probation officer also applied an additional two-level enhancement for an intended loss to a government program greater than $1,000,000, *see* U.S.S.G. § 2B.1(b)(7), for a total offense level of 26. The probation officer recommended that the district court order Anieze-Smith to make restitution for the $897,726.91 that Medicare paid.

Anieze-Smith submitted written objections to the PSR. She challenged the loss calculation, arguing that the intended loss amount should be only 80 percent of the amount billed because she knew that Medicare would pay only 80 percent on the bills that she submitted. Anieze-Smith further argued that her intended loss should be an unspecified lower amount because the government did not prove that all of the beneficiaries for which ITC billed Medicare did not need or receive the power wheelchairs. The government filed written responses to each of Anieze-Smith's written objections. Regarding Anieze-Smith's contention that the evidence did not support the loss amount, the government listed the evidence presented at trial supporting the conclusion that all of ITC's power wheelchair claims were fraudulent.

The district court held a sentencing hearing on May 31, 2016. At the hearing, Anieze-Smith argued, for the first time, that the restitution amount should be limited to losses stemming from the counts charged. Anieze-Smith also argued that there was insufficient evidence to support the

finding that all of the power wheelchairs billed to Medicare were medically unnecessary.

The district court addressed each of Anieze-Smith's written objections to the PSR. The district court found that the intended loss amount was 80 percent of Medicare's allowed amount for a total of $1,011,666.96. The district court therefore found Anieze-Smith's total offense level was 24. *See* U.S.S.G. § 2B1.1(b)(1)(H), (b)(7); § 3B1.3.

Regarding Anieze-Smith's objection to the sufficiency of the evidence to support the loss calculation figure, the district court held, "For the reasons that were stated in the government's response to the objections, the court rejects the objection[ ] to [the] presentence report." The district court further stated, "I find that the revised presentence report is accurate and correct except to the extent that it does not reflect the revised intended loss amount figure which affects the total offense level. I, therefore, adopt . . . the presentence report in its material aspects except as noted."

The district court sentenced Anieze-Smith to five years' probation and ordered her to pay restitution in the amount of $814,455.95.

## II

The district court was required to order restitution in this case under the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A. The MVRA makes restitution mandatory for certain crimes, including health care fraud. The statute requires courts to "order restitution to each victim in the full amount of each victim's losses . . . and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

"[W]e review *de novo* the legality of a restitution order," including the district court's valuation method, "but if the order is within the statutory bounds, we review the amount for abuse of discretion." *United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004). We review factual findings supporting an order of restitution for clear error. *United States v. Stoddard*, 110 F.3d 1140, 1147 (9th Cir. 1998).

## III

### A.

We first address Anieze-Smith's challenges to the sufficiency of the evidence supporting the district court's restitution order. She makes two arguments: First, Anieze-Smith argues that the government has not shown that all of the beneficiaries did not need the power wheelchairs that were delivered and billed for by ITC. Second, she argues that, due to her minor role in the business, she was unaware of the fraudulent nature of the majority of the power wheelchairs billed to Medicare. We address each argument in turn.

Regarding her first argument, we conclude that the district court did not clearly err by finding that each of the power wheelchair claims that Anieze-Smith and Garba billed to Medicare was fraudulent. The evidence presented at trial showed: (1) that bona fide power wheelchair claims are generally very rare because power wheelchairs are an item of last resort, (2) that an inordinately high percentage of ITC's claims related to power wheelchairs, (3) that a large percentage of ITC's referrals originated from doctors at compromised clinics, and (4) that fraud permeated ITC's billing records. The district court could reasonably infer, based on the evidence presented, that all of ITC's billing for power wheelchairs was fraudulent. *United States v.*

*Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) ("[The MVRA] minimally requires that facts be established by a preponderance of the evidence . . . .").

Likewise, regarding Anieze-Smith's second argument, we conclude that the district court did not clearly err by finding that Anieze-Smith directly harmed the victim. The MVRA defines a "victim" as a person "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(1)(2). Anieze-Smith argues that her role in ITC was limited and that she was "entirely unaware" of any harm. Given her asserted lack of knowledge, she contends that imposing restitution for those harms violates the MVRA's "directly harmed" requirement. Again, the evidence sharply undermines Anieze-Smith's argument. The government presented credible evidence at trial that Anieze-Smith was substantially involved in the operation of ITC and its billing practices. In a declaration responding to a *subpoena duces tecum*, Anieze-Smith identified herself as ITC's custodian of records and compliance officer, describing her job title as "CEO/Member/Partner" of ITC, and certifying that her job duties included "accreditation compliance monitoring" and "managing financial records." She had an MBA degree, owned and operated an accounting business, and was an enrolled agent with the Internal Revenue Service. Moreover, Anieze-Smith's name and signature were on records throughout ITC's files, including records indicating that Anieze-Smith was involved in billing for unnecessary wheelchairs, billing for power wheelchairs before they were delivered, and delivering power wheelchairs without having made prior home assessments. Anieze-Smith also admitted that she picked up prescriptions directly from a compromised clinic, and bank records showed that Anieze-Smith made large cash withdrawals from ITC's bank

account.  The district court's conclusion that Anieze-Smith was an active participant in the entire fraudulent scheme was not clear error, and its imposition of restitution for the entire fraudulent amount was not an abuse of discretion.

## B.

We next address Anieze-Smith's contention that the restitution imposed must be limited to the counts charged in the indictment.  The government may elect to charge health care fraud as a single continuing offense, or as individual executions of a fraudulent scheme.  *See United States v. Holden*, 806 F.3d 1227, 1231−32 (9th Cir. 2015) (citing *United States v. Awad*, 551 F.3d 930, 938 (9th Cir. 2009)).  Here, the government elected to charge Anieze-Smith with five individual executions of a fraudulent scheme to defraud.  Anieze-Smith contends that the district court's restitution order should be limited to the losses traceable to the five executions of the fraudulent scheme on which she was indicted and convicted.  We reject this argument because it is squarely foreclosed by our case law.

The MVRA requires the district court to order restitution in the amount of the victim's actual loss.  When the case involves a conviction for a crime that requires as an element proof of a scheme,

> restitution may be ordered for all persons directly harmed by the entire scheme.  Such restitution is not limited to harm caused by the particular counts of conviction (as it would be absent the scheme element).  In this context, a restitution order may be based on related but uncharged conduct that is part of a fraud scheme.

*In re Her Majesty the Queen in Right of Canada*, 785 F.3d 1273, 1276 (9th Cir. 2015) (citations omitted); *see also United States v. Grice*, 319 F.3d 1174, 1175–79 (9th Cir. 2003) (per curiam) (affirming a restitution award for the full fraud scheme even though the defendant only pled guilty to part); *United States v. Lawrence*, 189 F.3d 838, 846–47 (9th Cir. 1999) (affirming an award of restitution for the full amount in a fraud scheme, including "related conduct" in the amount of $574,700, even though only $60,411 of that amount was "directly attributable to the acts for which the jury found [the defendant] guilty").

Because an element of health care fraud is a scheme or pattern of criminal conduct, *see* 18 U.S.C. § 1347(a), the MVRA permits the district court to base restitution on related but uncharged conduct that was part of Anieze-Smith's fraud scheme. That is, the restitution amount was not confined to the billing underlying the particular counts of conviction. We conclude that the district court properly included losses relating to the overall fraudulent scheme in the restitution amount.[2]

## C.

Finally, we turn to Anieze-Smith's argument that the district court's restitution order should be limited to losses traceable to executions of the fraudulent scheme that occurred within the statute of limitations. The offense for

---

[2] Anieze-Smith's remaining arguments on this point are constitutional arguments that she concedes are contrary to controlling circuit authority and were made only to preserve the issues for possible en banc consideration. We reject these arguments as foreclosed by controlling circuit precedent. *See United States v. Green*, 722 F.3d 1146, 1149 (9th Cir. 2013); *United States v. Eyraud*, 809 F.3d 462, 471 (9th Cir. 2015).

which Anieze-Smith was convicted has a five-year statute of limitations. 18 U.S.C. § 3282(a). The government filed the indictment on April 13, 2013, meaning that the charged offenses must have been committed on or after April 13, 2008. The indictment alleged that the fraudulent Medicare billing scheme extended from 2006 to 2009, but it charged five executions that occurred in 2008, within the statute of limitations. By imposing restitution in the entire amount paid by Medicare throughout the term of the fraudulent scheme, the district court necessarily imposed restitution for fraudulent acts outside the statute of limitations. Because Anieze-Smith raises this statute of limitations argument for the first time on appeal, we review for plain error. *See United States v. Van Alstyne*, 584 F.3d 803, 819 (9th Cir. 2009).

Anieze-Smith's argument presents an issue of first impression in this circuit. As discussed above, we have held that the MVRA authorizes a district court to impose restitution based on related but uncharged conduct that is part of a fraudulent scheme. *See Lawrence*, 189 F.3d at 846–47. But we have not yet had occasion to address whether that rule applies when the conduct occurred outside the statute of limitations. Although Anieze-Smith's argument calls for us to decide this issue in the first instance, her argument is based on the same erroneous principles that we have rejected before—namely, the contention that the restitution order must be limited to the reach of the conduct charged in the indictment. As we explain below, the text of the MVRA does not limit restitution to the reach of the indictment, but instead authorizes district courts to order restitution for all losses directly resulting from conduct throughout the course of the fraudulent scheme. We reject Anieze-Smith's argument and hold that the MVRA authorizes district courts to impose restitution to all victims

for the losses they suffered from the defendant's conduct throughout the course of the fraudulent scheme, even where such losses were in part caused by conduct outside the statute of limitations.

A plain reading of the statute demonstrates that Congress intended the district court to compensate victims of scheme-based crimes for all losses incurred throughout the entire scheme. The MVRA requires the district court to order the defendant to make restitution to the victim of the offense. The statute defines a victim as:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct *in the course of the scheme*, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2) (emphasis added). Congress could have drafted a restitution provision that included only losses caused by the defendant's criminal conduct related to the crime charged, but the statute plainly calls for restitution encompassing losses stemming from conduct throughout the scheme, and not only for the counts charged in the indictment.

When interpreting this section of the MVRA, we have consistently recognized that the statute permits restitution for acts outside the reach of the indictment. We have held that "when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, . . . the restitution order [may] include acts of

related conduct for which the defendant was not convicted," at least when those acts occurred within the statute of limitations. *Lawrence*, 189 F.3d at 846–47; *see also Grice*, 319 F.3d at 1175–79. We have also read this section of the MVRA to authorize restitution to victims not named in the indictment, provided that the victim was directly harmed by the defendant's criminal conduct in the course of a scheme or conspiracy. *See United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007) ("[T]he fact that the [victim] was not mentioned in the indictment is immaterial.").

We similarly here conclude that, although the statute of limitations may prevent the government from charging a defendant for acts that occurred outside the statute of limitations, it poses no bar to imposing restitution under the MVRA for damages occurring from the full scheme.

The Eleventh Circuit is the only other circuit to have squarely addressed this issue in a published opinion, and it has reached the same conclusion. *See United States v. Dickerson*, 370 F.3d 1330 (11th Cir. 2004). In *Dickerson*, defendant James Dickerson was charged with thirty-six counts of wire fraud. *Id.* at 1332–33. The indictment alleged that Dickerson perpetrated a fraudulent scheme to collect unnecessary social security checks from October 1996 to June 2000. *Id.* The parties agreed that the five-year statute of limitations prevented the government from charging Dickerson with individual executions of health care fraud occurring before July 1997. *Id.* at 1333. Dickerson pled guilty to all thirty-six counts of wire fraud. *Id.*

The presentence investigation report recommended that the district court order Dickerson to make restitution in the amount of $44,178.40. *Id.* at 1333–34. This figure represented the entire sum fraudulently obtained by Dickerson throughout the course of the scheme. Dickerson

objected, arguing that the statute of limitations precluded the district court from ordering restitution for benefits he received before July 1997. *Id.* at 1334. He contended that the correct amount of restitution was $35,946.00, the total sum of the benefits he received within the statute of limitations. *Id.* The district court rejected Dickerson's argument and imposed restitution in the entire amount of the losses stemming from the scheme. *Id.* at 1334–35.

The Eleventh Circuit affirmed the restitution order, holding that "a district court may order restitution for all losses resulting from a common scheme, even those caused by conduct occurring outside the statute of limitations." *Id.* at 1341. The court explained that, in other contexts, a district court is permitted to consider conduct occurring outside of the statute of limitations in sentencing. Specifically, the court cited its decision in *United States v. Behr*, 93 F.3d 764, 765–66 (11th Cir. 1996), in which it held that—in a case where proof of a fraudulent scheme is an element—relevant conduct for the purpose of sentencing guideline enhancements may include conduct that was part of the scheme even when that conduct occurred outside the statute of limitations. The court further explained that the reasoning in *Behr* applied with equal force in the restitution context: "If a district court may consider relevant conduct occurring outside of the statute of limitations in determining the offense level (and, indirectly, the range of possible sentences), we fail to see what precludes it from considering such conduct in fashioning a restitution order." *Id.* at 1342. The court concluded:

> [W]here a defendant is convicted of a crime of which a scheme is an element, the district court must, under 18 U.S.C. § 3663A, order the defendant to pay restitution to all victims

> for the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside the statute of limitations.

*Id.*[3]

The *Dickerson* court also concluded that the restitution order did not contradict the Supreme Court's holding in *Hughey v. United States*, 495 U.S. 411 (1990). *Hughey* held that Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, "authorize[d] an award of restitution only for the loss caused by the specific conduct that [was] the basis of the offense of conviction." *Id.* at 413. Later in 1990, Congress amended the VWPA to broaden the definition of "victim," partially overruling *Hughey*. *See Lawrence*, 189 F.3d at 846. The *Dickerson* court explained that its restitution order did not run afoul of *Hughey* because its conclusion was based on the definition of "victim" in the MVRA, which is identical to the amended definition of victim in the VWPA. 370 F.3d at 1338–39. Although the parties here did not raise *Hughey* in their briefing or at oral argument, we agree with the *Dickerson* court that, in light of the amended statutory language, permitting restitution for losses incurred throughout the course of a fraudulent scheme, even when those losses stem from acts that occurred

---

[3] Citing *Dickerson*, the Tenth Circuit has also held, in an unpublished decision, that the district court could order a defendant to pay restitution for all losses the victims suffered as a direct result of a fraudulent scheme, even if the losses were caused by conduct outside the statute of limitations. *United States v. Williams*, 356 Fed. App'x 167, 170 (10th Cir. 2009). Although we are not obligated to follow this *Williams* case from the Tenth Circuit, it is persuasive that *Dickerson* states the correct approach.

outside the statute of limitations, does not run afoul of *Hughey*.

Our reasoning follows the Eleventh Circuit's analysis. Like our cases interpreting the MVRA's treatment of scheme-based crimes, our cases interpreting "relevant conduct" for guidelines purposes have recognized that relevant conduct includes acts other than those underlying the charges. We have held that district courts may consider time-barred conduct for purposes of enhancing a defendant's sentence. *United States v. Williams*, 217 F.3d 751, 753–54 (9th Cir. 2000) (explaining that consideration of fraudulent conduct outside the statute of limitations in sentencing is "consistent with this circuit's prior cases interpreting broadly the relevant conduct provision, largely unrestrained by whether the defendant has been held criminally accountable for such actions").

The district court did so here when it imposed a 14-level enhancement based on the intended loss to Medicare. *See* U.S.S.G. § 2B1.1(b)(1). The intended loss amount calculation included all claims submitted by ITC for power wheelchairs throughout the entire duration of the fraudulent scheme. The Eleventh Circuit's analogy to conduct considered for sentencing guidelines purposes—which is not limited to the charges alleged in the indictment—reinforces our own conclusion that the MVRA authorizes restitution for losses resulting from a fraudulent scheme, even if such conduct is not chargeable in the indictment.

We join the Eleventh Circuit in holding that a district court may order restitution for all losses resulting from a fraudulent scheme, even those caused by conduct occurring outside the statute of limitations. Applying our rule to this case, we conclude that there was no plain error in the district court's restitution order.

## IV

The district court did not err in imposing restitution for the entire amount of damages caused by the fraudulent scheme as alleged in the indictment.

**AFFIRMED**.