**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 23 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-3301 |
| Plaintiff - Appellee, | D.C. No. 3:12-cr-00485-SI-1 |
| v. | |
| JON M. HARDER, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted June 9, 2025
Portland, Oregon

Before: TALLMAN, OWENS, and VANDYKE, Circuit Judges.

Jon M. Harder appeals from the district court's order requiring him to pay

$74,062,211.92 in restitution pursuant to the Mandatory Victim Restitution Act

(MVRA). We review the challenge to the restitution order, as well as the district

court's valuation methodology, de novo. *United States v. Anieze-Smith*, 923 F.3d

565, 570 (9th Cir. 2019). As the parties are familiar with the facts, we do not

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court correctly ordered restitution in this case because Harder did not suffer prejudice from the delay. When applicable, the MVRA instructs district courts to impose restitution no more than 90 days after sentencing. 18 U.S.C. §§ 3663A(a)(1), 3664(d)(5). But "because the procedural requirements of section 3664 were designed to protect victims, not defendants, the failure to comply with them is harmless error absent actual prejudice to the defendant." *United States v. Moreland*, 622 F.3d 1147, 1173 (9th Cir. 2010) (citation omitted). "[P]roof of prejudice is [also] generally a necessary . . . element of a due process claim," which Harder also raises here. *United States v. Lovasco*, 431 U.S. 783, 790 (1977).

A defendant can be prejudiced by a delay if he lacked notice that he would owe restitution, or if the delay deprived him of documents or witnesses critical to his defense against restitution. *See Moreland*, 622 F.3d at 1173. Here, Harder was on clear notice that he owed restitution from his plea agreement and the court's statements at sentencing. *See United States v. Cienfuegos*, 462 F.3d 1160, 1163 (9th Cir. 2006) (noting that defendant received notice of his restitution obligation "by the terms of his plea agreement"); *Moreland*, 622 F.3d at 1173 (same but by the district court's statements at sentencing). The district court instructed the parties to confer and schedule a mutually convenient hearing date. No one did.

Anytime thereafter, including during his pursuit of clemency, Harder could have requested a restitution hearing to determine the precise amount that he owed. *See Dolan v. United States*, 560 U.S. 605, 615–16 (2010) (noting that a "defendant normally can mitigate any harm that a missed deadline might cause" by alerting the court to the "missed deadline" and requesting a restitution hearing). And the district court found, after an evidentiary hearing, no bad faith by the government, and noted a large part of the delay was caused by an enormously complex receivership trying to repay the victims for their losses.

The delay also did not deprive Harder of documents nor witnesses necessary to "rebut the claimed restitution amount." *Id.* at 617. Harder actively participated through his counsel in the multi-year receivership process that facilitated substantial repayment to many of his victims, and by the time of the restitution hearing three years later, Harder retained access to the summary spreadsheet documenting the receiver's work and confronted the witnesses involved in that process. There was no prejudice.

Harder also argues the district court erroneously placed the burden on him to show prejudice, rather than on the government to prove that its delay was harmless, requiring us to at least remand to the district court to reevaluate prejudice. The district court properly followed our decision in *Cienfuegos*, which also placed the burden on the defendant to show prejudice when reviewing for harmless error "the

23-3301

Government's failure to follow the requirements and procedures of section 3664." 462 F.3d at 1162–63. But Harder contends that *Cienfuegos* was abrogated by *McIntosh v. United States*, in which the Supreme Court stated that failing to meet the time limitations set forth in Federal Rule of Criminal Procedure 32.2 is "subject to harmless-error principles on appellate review," a statement that Harder interprets as requiring the government to prove harmlessness, instead of requiring him to prove prejudice. 601 U.S. 330, 338 (2024). But because both *Cienfuegos* and *McIntosh* direct courts to assess whether procedural errors regarding restitution and forfeiture were harmless, and *McIntosh* is silent on which party bears the burden, the cases are not "clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *see Cienfuegos*, 462 F.3d at 1162-63; *McIntosh*, 601 U.S. at 338-39. There was no due process violation here.

2. The district court also correctly calculated the restitution amount. First, Harder contends that his restitution obligation should be reduced to zero because the assets he turned over to the receiver would have fully repaid investors but for the $155 million spent in receivership expenses, which he argues are not compensable under *Lagos v. United States*, 584 U.S. 577 (2018), and *United States v. Lomow*, 266 F.3d 1013 (9th Cir. 2001), *superseded by statute on other grounds as recognized in United States v. McEnry*, 659 F.3d 893 (9th Cir. 2011).

The restitution order does not run afoul of *Lagos*, however, because it does not reimburse Harder's victims for expenses they personally incurred during the receivership proceedings. 584 U.S. at 580–82. *Lomow* is similarly inapposite, as it arose under a different restitution statute and involved a single institutional victim and direct payment to its receiver. 266 F.3d at 1020–21. In contrast, Harder's case involves mandatory restitution under the MVRA owed to 1,488 individual victims. Under the MVRA, Harder can only receive credit for money "return[ed]" to those victims, not for the gross receipts of the receivership. 18 U.S.C. § 3663A(b)(1)(A); *see also Robers v. United States*, 572 U.S. 639, 641 (2014) (holding that restitution under the MVRA is reduced by "the amount of money the victim [actually] receive[s]").

Lastly, Harder challenges the district court's reliance on the receiver's Money-In/Money-Out (MIMO) method to calculate restitution, which he argues conflicts with the method prescribed by § 3663A(b)(1) of the MVRA. But the MIMO method is entirely consistent with that statutory framework—particularly in the context of financial fraud involving cash investments. *See Robers*, 572 U.S at 643 (holding that, under the MVRA, when property lost to fraud is "money, then 'the property . . . returned' must also be . . . money"); *id.* (conceding that, in cases involving cash investments, some of § 3663A(b)(1)(B)'s provisions will "seem

awkward or unnecessary" when calculating restitution). Thus, rather than depart from the MVRA, the MIMO method operationalizes it in this context.

**AFFIRMED**.