Greco, PJ.
The defendant, Phoenix Insurance Company (“Phoenix”), has appealed the allowance of the plaintiffs’ motion for summary judgment and the denial of its own motion for summary judgment.
The plaintiffs, William and Linda Cotter (“the Cotters”), were insured by Phoenix for damage to their condominium in Concord for the year beginning December 13, 2005. It is undisputed that on September 1,2006, the Cotters suffered some damage to their property. They observed moisture on the ceiling of a study on the first floor that appeared to have been caused by some sort of leakage in the master bath above. After the tiles around the shower of the bath were removed, water damage on the wood underneath was found. While Phoenix paid a small amount for the damage to the study’s ceiling, it denied the claim for repairs to the bathroom. The Cotters then filed this action in which they sought approximately $20,000.00 in damages.
According to Mr. Cotter’s deposition and answers to interrogatories, before he and his wife moved into their condominium in June of 2000, they made various repairs, which included hiring someone to regrout the tile in the shower mentioned above. They surmise that the “damage was caused by leaks in the front wall of the shower and/or points surrounding the shower door or from some other source,” more specifically that water may have “seeped through a hole/holes in the grout of the shower wall.” The water then flowed down to the wood between the shower and the ceiling below, causing the wood to rot and the ceiling to become water damaged. In denying the claim, Phoenix seemed to accept this explanation, but concluded that “ [tjhis type of loss is indicative of deterioration of the grout, rather than just one incident”
At a trial, the Cotters, as the insured, would have borne “the initial burden of ‘prov[ingj that [their] loss [was] within the descriptions of the risks covered’” by their policy. Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 230 (1997), quoting Tumblin v. American Ins. Co., 344 Mass. 318, 320 (1962). “Once basic risk coverage [was] established, the burden [would have] shift[ed] to the insurer to prove the applicability of any exclusion to coverage set forth outside of the insuring clause.” *56 Solimine v. Massachusetts Prop. Ins. Underwriting Ass’n, 65 Mass. App. Ct. 782, 784 n.2 (2006).[2] However, to be entitled to summary judgment, the Cotters “assume [d] the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if [they] would have no burden on an issue if the case were to go to trial.” Tate v. Department of Mental Health, 419 Mass. 356, 360 (1995). To be successful, they must demonstrate that Phoenix “has no reasonable expectation of proving an essential element of [its] case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Accordingly, the allowance of the Cotters’ motion for summary judgment would have been appropriate if they demonstrated that it was undisputed that the damage to their property was the type covered by the policy, and that Phoenix was unable to demonstrate that there was a genuine question of fact as to whether the loss was excluded from coverage.
The Cotters contend that their burden on the issue of coverage was satisfied because it was undisputed that their policy was an “all risk” policy. To support that contention, they appended to their motion a document, apparently generated by Phoenix, describing the policy on their property as “HA-32-(06-91) CONDOMINIUM ALL RISK, COVERAGE A.” An “all risk” policy has been characterized as one that covers some “kind of ‘fortuitous loss’ which is ‘not usually covered under other insurance’ and against which an ‘all risk’ policy is designed to extend protection.” Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 1 Mass. App. Ct. 762, 763 (1974), quoting 13 G. Couch, INSURANCE §48.38, at 596 (2d ed. 1965). The problem here, however, is that the policy itself is at odds with the above document. The Cotters’ policy is unlike the one in Solimine, supra at 783 n.1 which “insure[d] against risk of direct loss” to the property covered, but which then went on to list various exclusions. Compare also Bettigole v. American Employers Ins. Co., 30 Mass. App. Ct. 272, 273 (1991). No such general statement of coverage is set forth in the Cotters’ policy. To the extent relevant to this case, the policy first describes, on page 2 of HA-6, the property covered, to wit, “the alterations, appliances, fixtures and improvements which are part of the building contained within the residence premises.” It is not until page 4 of HA-6 that the policy describes what will be paid for damage to covered property that is caused “by an applicable Peril insured Against.” The insured does not learn of those perils until page 7 of HA-6. The peril most relevant *57 here is No. 12, namely, the “[a]ccidental discharge or overflow of water or steam from within a plumbing, drainage, heating or air conditioning system” for which Phoenix would “also pay for tearing out and replacing any part of the building on the residence necessary to repair the system... from which the water or steam escaped.” Some exclusions are listed on page 8 of HA-6. The exclusions relevant here, however, cannot be found in HA-6, but instead appear on page 2 of HA-32, where it is stated that Phoenix “insure [s] against risks of direct physical loss to property described in COVERAGE A” (emphasis supplied). Then various exceptions are listed, including losses caused by:
CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVERA PERIOD OF TIME, WEEKS, MONTHS, OR YEARS, FROM WITHIN A PLUMBING, [OR] DRAINAGE,... SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE;....
WEAR AND TEAR, MARRING, DETERIORATION, AND FAILURE TO MAINTAIN;...
INHERENT VICE, LATENT DEFECT, MECHANICAL BREAKDOWN; [or] SMOG, RUST, MOLD, WET OR DRY ROT[.]
Nowhere in the Cotters’ policy is there a broad statement of coverage. Rather, coverage extends only to certain enunciated perils, and even to those there are some exclusions. With respect to water damage, the Cotters’ policy covered “[a]ccidental discharge or overflow of water or steam from within a plumbing [or] heating ... system.” As the trial judge observed, “water seeping through grout in a shower is not ‘from within a plumbing or drainage system.’” The Cotters presented no evidence that there had been an accidental discharge of water. They appear merely to be speculating that water came out of the shower head as anticipated in the normal use of a shower, and that the water then found its way into a hole in the grout and ultimately caused the damage. Nor can it be said at this point that the water accidentally overflowed into any such hole. No evidence was advanced that the water flowed into the hole only after it went beyond the capacity of receptacles (e.g., sinks, showers, toilets, etc.) to hold it. Thus, the Cotters have not presented undisputed evidence demonstrating, as a matter of law, that their policy covers the alleged loss. Even if this was a covered loss, genuine questions of fact would remain as to whether any of the above described exclusions would apply, such as whether there was repeated seepage over a period of time, whether the damage resulted from wear and tear, deterioration or failure to maintain the grouting in the shower or any part of the plumbing system itself, or whether there was a latent defect in the grout or anywhere else. Accordingly, it was error to allow the Cotters’ motion for summary judgment.
We need not address whether it was also error to deny Phoenix’s motion. That denial was an interlocutory order from which no immediate appeal would lie. Cf. Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 371 (1996); McGrath v. McGrath, 65 Mass. App. Ct. 660, 672 (2006). Thus, we need not address Phoenix’s contention that the Cotters were precluded from bringing their action because they did not comply with a provision in their policy making participation in arbitration a condition precedent to commencing suit to recover for their loss. In any event, there would be a material issue of fact as to whether, in the circumstances of this case, that provision was waived. See Lancaster v. General Accident Ins. Co. of America, 32 Mass. App. Ct. 925, *58 926 (1992), aff’d, 413 Mass. 1007 (1992). Moreover, it is far from clear that this provision is enforceable. It is based on G.L.c. 175, §99, which deals with fire insurance, and appears on page 2 of document HA-300 under the somewhat cryptic heading of “Appraisal.” There is a different “Appraisal” section on page 10 of HA-6 (06-91), which provides that if the parties fail to agree on the amount of a loss, “either one can demand that the amount... be set by appraisal.” While §99 states that a referral to outside parties “shall be a condition precedent to any right of action,” the provision at issue in this case contains no such language. It simply describes a method provided by “Massachusetts law... for settling the disagreement.”
Accordingly, summary judgment for the plaintiffs, William and Linda Cotter, is hereby vacated, and the allowance of their motion for summary judgment is reversed. The appeal of Phoenix from the denial of its motion for summary judgment is dismissed. The case is returned to the Concord Division for trial.
So ordered.

 Phoenix seeks to avoid tins burden shifting on the ground that “a plaintiff seeking to recover for breach of a duty or obligation created by a general clause of a contract, which also contains an exception descriptively limiting such duty or obligation, must allege and prove that his cause of action is within the contract and outside the exception.” Murray v. Continental Ins. Co., 313 Mass. 557, 563 (1943). Here, however, the exceptions are not contained in the general clauses that set out the coverage of the Cotters’ policy. Coverage is set forth in document HA-6 (06-91) on page 2 of 18 pages. The perils insured against are described on page 7 of that document The relevant exclusions are contained in a separate document (HA-32, pages 1 and 2). Prefacing the listing of those exceptions are the following words: “We insure against risk of direct physical loss to property described in COVERAGE A EXCEPT.” We interpret Murray to mean that the coverage and exceptions are discussed together, one following the other. If is not sufficient simply to add an introductory phrase pages later in a separate document.