E-FILED
CNMI SUPREME COURT
E-filed: Jun 25 2025 02:15PM
Clerk Review: Jun 25 2025 02:15PM
Filing ID: 76525598
Case No.: 2022-SCC-0016-CIV
Judy Aldan





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**SECUNDINA UNTALAN PANGELINAN AND SELINA MARIE PANGELINAN,**
*Plaintiff-Appellees,*

*v.*

**JOHN SABLAN PANGELINAN,**
*Defendant-Appellant.*

**Supreme Court No. 2022-SCC-0016-CIV**

---

**ORDER DENYING PETITION FOR REHEARING**

**Cite as: 2025 MP 3**

Decided June 25, 2025

——————

ASSOCIATE JUSTICE PERRY B. INOS
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE WESLEY M. BOGDAN

——————

Superior Court Civil Action No. 17-0067
Associate Judge Joseph N. Camacho, Presiding

——————

INOS, J.:

¶ 1    Appellant John Sablan Pangelinan ("Appellant" or "John") petitions for rehearing, focusing primarily on our previous holdings that his quiet title action was barred by issue preclusion and that the lower court properly set aside the entry of default against Appellees Secundina and Selina Pangelinan ("Appellees"). For the below reasons, his petition is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    The full facts of this case and relevant probate decisions are detailed in *Pangelinan v. Pangelinan*, 2024 MP 5 and *In re Estate of Norberto Eduardo Pangelinan*, Civ. No. 15-0169 (NMI Super. Ct. Dec. 19, 2016) (Decree of Final Distribution); *In re Estate of Norberto Eduardo Pangelinan*, Civ. No. 15-0169 (NMI Super. Ct. Dec. 19, 2016) (Order Determining Heir and Approving the Lease and Sale of Real Property); *In re Estate of Norberto Eduardo Pangelinan*, Civ. No. 15-0169 (NMI Super. Ct. Dec. 19, 2016) (Order Denying John S. Pangelinan's Motions for Reconsideration). For purposes of this petition, we briefly summarize the relevant facts. In 2017, Appellees sued John in the Superior Court, claiming, among other things, damages for abuse of process based on John's actions during the probate of Norberto Eduardo Pangelinan— Appellees' husband and father, respectively, and John's first cousin.

¶ 3    John responded by filing counterclaims, including a quiet title action to land subject to the probate of Norberto's estate. Shortly thereafter, he amended his answer and counterclaim. In response, Appellees moved to dismiss the counterclaims, but filed their motion three days late, having miscalculated the deadline by relying on the date of the amended counterclaims, rather than the original counterclaims. Consequently, the clerk entered a default against them, and John moved for entry of default judgment.

¶ 4    Appellees moved to set aside the entry of default, which the court granted. The court also granted their motion to dismiss, holding that the quiet title claim was barred under the doctrine of issue preclusion. The case proceeded to a bench trial on the remaining claims, after which the court found John liable for abuse of process. The court later awarded Appellees $52,756.49 in damages against John.

¶ 5    John appealed, arguing that the trial court erred in setting aside the entry of default and dismissing his quiet title action on issue preclusion grounds. After briefing and oral argument, we affirmed the lower court's decision in an opinion issued on September 23, 2024. John timely filed a petition for rehearing.

## II. STANDARD OF REVIEW

¶ 6    A petition for rehearing "must state with particularity each point of law or fact that the petitioner believes the Court has overlooked or misapprehended and must argue in support of the petition. Oral argument is not permitted." NMI SUP. CT. R. 40(a)(2). A party may not reassert previously raised arguments or raise new issues unless extraordinary circumstances exist. *Commonwealth v. Reyes*, 2020 MP 6 ¶ 7.

### III. DISCUSSION

*A. We did not overlook or misapprehend any point of law or fact in affirming the lower court's decision to set aside the entry of default.*

¶ 7     John first argues that Appellees' default in answering his counterclaim cannot be set aside—an assertion that, if accepted, would require us to nullify Rule 55(c) of the Rules of Civil Procedure, and contravene our test for setting aside entries of default set out in *In re Woodruff*, 2015 MP 11. John next argues that the clerk of court erred in not entering default judgment, and that the entry of default itself entitled him to the relief requested. He also asserts that Appellees did not properly argue the *Woodruff* factors in their motion to set aside default, and that the court impermissibly supplied argument on their behalf.

*i. Whether the filing deadline for a counterclaim answer is a mandatory claim-processing rule does not change our analysis of the lower court's decision.*

¶ 8     John argues we did not address his argument that the deadline to answer his amended counterclaim was a mandatory claim-processing rule that the lower court lacked discretion to waive. Though our opinion did not specifically address this assertion, this was not an oversight. The same rule that governs entry of default also permits the court to set it aside,[1] and we addressed the lower court's application of the rule in our opinion. *See Pangelinan v. Pangelinan*, 2024 MP 5 ¶¶ 47–57.

¶ 9     John's argument regarding claim-processing rules relies entirely on federal law. The U.S. Supreme Court has held that mandatory claim-processing rules are not jurisdictional time limits beyond which a court is divested of authority to hear a case; rather, such rules "regulate the timing of motions," and the court lacks discretion to waive the deadline when such a rule has been properly invoked by a party. *McIntosh v. United States*, 601 U.S. 330, 337 (2024) (quoting *Dolan v. United States*, 560 U.S. 605, 610 (2010)). Federal jurisprudence over the Federal Rules of Civil Procedure, which we often view favorably, is not mandatory authority in the Commonwealth—the final word on the interpretation of Commonwealth law rests solely with this Court. *Syed v. Mobil Oil Mariana Islands, Inc.*, 2012 MP 20 ¶ 11 ("It is the province and duty of this Court alone to definitively decide questions of Commonwealth law, which includes interpreting our Rules of Civil Procedure.").

¶ 10    We have previously discussed the applicability of claim-processing rules, finding mandatory claim-processing rules are "less stern" than jurisdictional time limits and may be waived or forfeited if not properly raised by the party attempting to enforce them. *Norita v. Commonwealth*, 2020 MP 12 ¶ 12. John believes that he has properly raised enforcement of the rule setting the deadline to answer his counterclaim by moving for default, however the rule he seeks to

---

[1] We specifically refer to an earlier version of Commonwealth Rule of Civil Procedure 55 and note that although a newer version of the rules of civil procedure has since been adopted, the version in effect at the relevant time governs this case. *See Pangelinan v. Pangelinan*, 2024 MP 5 ¶ 47 n.12.

enforce expressly allows for the setting aside of entry of default under the proper circumstances. COM. R. CIV. PRO. 55(c). Mandatory-claim processing rules act as a bar against court actions *outside* of the scope of statutory authority. For example, in *Dolan v. United States*, a criminal defendant successfully objected to a restitution hearing being held more than six months after sentencing when the rule required a court to order restitution within 90 days of sentencing. 560 U.S. at 607–610. Similarly, in *McIntosh*, a court impermissibly entered an order of criminal forfeiture against a defendant after sentencing, despite the requirement that forfeiture be entered before sentencing. 601 U.S. 330 at 333. In both cases, the court acted outside of the procedure mandated by the statute. Here, the court followed the statute[2] which states that "[f]or good cause shown the court may set aside an entry of default." COM. R. CIV. P. 55(c).

¶ 11    As a general principle, we do not construe statutory provisions in a manner that renders other provisions meaningless. *In re Estate of Rofag*, 2 NMI 18, 29 (1991) ("One statutory provision should not be construed to make another provision inconsistent or meaningless."). To accept John's position would effectively nullify Rule 55(c). We decline to do so, particularly given that the parallel federal rule is substantively identical and remains undisturbed.

*ii. Appellees' default did not entitle John to entry of judgment by the clerk of court.*

¶ 12    Under Commonwealth Rule of Civil Procedure 55(b)(1), the clerk may enter default judgment against the defaulting party if the claim is for a sum certain or a sum which by computation can be made certain. What constitutes a "sum certain" is not a question easily settled; however, we have said that the inquiry centers on "whether the claim sets forth a claim capable of simple mathematical computation." *J.C. Tenorio Enter., Inc. v. Uddin*, 2006 MP 22 ¶ 14 (quoting *Franchise Holding II, LLC. v. Huntington Rest. Grp., Inc.*, 375 F.3d 922, 925–929 (9th Cir. 2004)) (internal quotation marks omitted). An amount is not a sum certain when it requires additional research by the clerk to determine. *Id*. ¶ 15. A "sum certain" can also be termed a "liquidated amount" meaning the amount has been "ascertained and agreed upon by the parties or [set as a fee] by operation of law." *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1193 (Me. 1993) (quoting *Hallett Constr. Co. v. Iowa State Highway Comm'n*, 139 N.W.2d 421, 426 (Iowa 1966)). A claim is only a sum certain in actions "where the damages sought can be determined without resort[ing] to extrinsic proof." *Appleton v. Harrigan*, 61 V.I. 262, 270 (2014) (quoting *Interstate Food Processing Corp.*, 622 A.2d at 1193). Examples of a sum certain include contractually defined prejudgment interest on an unpaid balance for goods, attorney's fees based on a court approved fee schedule, and filing fees. *See Triple J Saipan, Inc. v. Ogo*, 2020 MP 15 ¶¶ 13–18; *Joeten Motor Co., Inc. v. Leon*

---

[2]    Rules promulgated by the Supreme Court pursuant to its authority under Article IV, section 9(a) of the NMI Constitution "have the status of statutes enacted by the legislature." *Commonwealth v. Kaipat*, 2024 MP 1 ¶ 5 n.2 (citing *Commonwealth v. Camacho*, 2002 MP 14 ¶ 14).

*Guerrero*, 2020 MP 14 ¶¶ 20–21. Other jurisdictions have similarly found acceptable sums certain to include contractual obligations and other forms of liquidated damages. *See, e.g., Smith v. Barfield*, 334 S.E.2d 487, 488 (N.C. Ct. App. 1985); *Hamer v. Faneros*, 2008 Mass. App. Div. 56 *10 (Mass. App. Div. 2008).

¶ 13    In each of these cases, the damages requested was a simply calculable amount based on a verifiable source such as a contract, or a court approved schedule. John's claims for $185,000 in "special damages," $10,000 in general damages, and $2,000,000 in punitive damages would require extrinsic proof. Punitive damages, in particular, may only be awarded when the trier of fact has found outrageous conduct based in evil motive or reckless indifference to the rights of others. *See Pangelinan v. Itaman*, 4 NMI 114, 118 n.27 (1994) (citing Restatement (Second) of Torts § 908 (1979)). Even if punitive damages can be awarded on default, a question we have not previously answered, the law requires a judicial, not clerical, determination. *See Sass v. Cohen*, 32 Cal. Rptr. 3d 441, 4544 (Cal. Ct. App. 2019) (stating that though punitive damages may be awarded on default if the requisite procedural steps have been followed, generally punitive damages are disfavored—particularly in cases involving default judgment). Here, it is clear that the damages claimed did not qualify as a sum certain.

### iii. Entry of default alone did not entitle John to relief.

¶ 14    Default judgments are generally disfavored, and cases should be decided on the merits if possible. *In re Woodruff*, 2015 MP 11 ¶ 20. Rule 55(c) allows courts to set aside defaults for good cause, and Rule 60(b) provides additional avenues for relief from default judgments upon showing of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or other reasons. The law does not grant John his requested relief at the moment of default because entry of default is not synonymous with entitlement to judgment. *See ANZ Guam, Inc. v. Lizama*, 2014 MP 11 ¶ 14. Default is viewed as an admission of liability, *id.*, but the preference for deciding cases on their merits allows for a default admission of liability to be excused under certain circumstances. Default is a two-step process, and until judgment is entered, a party is not entitled to relief. *Id*. (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).

### iv. The order setting aside the entry of default does not manufacture arguments on Appellees' behalf.

¶ 15    John argues that Appellees' motion to set aside entry default did not properly argue the factors for setting aside an entry of default established in *In re Woodruff*, 2015 MP 11. Because of this, he asserts that by analyzing the *Woodruff* factors, the court manufactured arguments for Appellees, contravening the adversarial process. He focuses on the alleged absence of a meritorious defense, a requirement for setting aside the entry of default, arguing that Appellees raised no meritorious defense in their motion to set aside entry of default. Pet. for Rehearing at 6.

¶ 16    While John vigorously challenges Appellees' motion, he did not include the motion in the appellate record, or as an exhibit to his petition for rehearing, making it impossible for us to know whether he is correct in his statements about what Appellees did or did not argue. Regardless, we did not overlook or misapprehend any point of law or fact in affirming the lower court's decision to set aside the entry of default based on the *Woodruff* factors. Our procedure reflects a strong policy against default when there is "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Woodruff*, 2015 MP 11 ¶ 20 (quoting *Roberto v. De Leon Guerrero*, 4 NMI 295, 297 (1995)). Whether good cause exists to set aside an entry of default is a discretionary determination for the trial court. *Id*. We conclude that the court objectively applied the proper legal test to the relevant facts, finding that Appellees' default was not based in culpable conduct and did not prejudice John, and that Appellees had raised a meritorious defense. *See Pangelinan*, 2024 MP 5 ¶ 52.

¶ 17    The narrow reading that a meritorious defense must appear in the motion to set aside default is incorrect. A meritorious defense must exist for an entry of default to be set aside, but we have never required that it be raised specifically in the motion to set aside default. The key inquiry is whether the party, at any stage, alleged facts that, if true, would constitute a defense to the underlying claim. *Id*. In analyzing this factor, the court determined that Appellees' motion to dismiss, filed four days late, set forth facts that, if taken as true, would constitute a meritorious defense. *Id*. The court properly analyzed the relevant facts and determined that, for good cause shown, the entry of default should be set aside. *Id*. ¶ 57. We did not overlook or misapprehend any point of fact or law in affirming this order, nor did we or the trial court manufacture arguments.

*B. We did not overlook or misapprehend any point of law or fact in affirming the lower court's application of issue preclusion to bar the quiet title claim.*

¶ 18    John also asserts we erred in applying issue preclusion to bar his quiet title claim. He argues we overlooked or misapprehended these points of law or fact:

(1) that the probate court's order determining Norberto's NMD status was not a final decision on the merits because the court's order was "terse" and lacked explanation;

(2) that the trial court order barring his quiet title claim was based in the doctrine of res judicata, not issue preclusion;

(3) that the probate court's decision was not final because the issue was under appeal when the trial court entered its order barring his quiet title claim;

(4) that the probate court's order establishing Norberto's NMD status did not determine his heirs or their NMD status;

(5) that under the standard of Commonwealth Rule of Civil Procedure 12(b)(6), the trial court should have accepted the allegations in his counterclaims as true and should not have dismissed his counterclaim to quiet title on the basis that it was precluded; and

(6) that the probate court decision was insufficient to bar his quiet title claim because a probate court decision does not determine ownership in cases where title is contested.[3]

### *i. The brevity of the probate court's order does not affect whether the determination was "on the merits."*

¶ 19    Whether a final decision is "on the merits" for the purposes of preclusion, rests on whether the decision adjudicated the substantive issues pled, rather than disposed of the case on a procedural basis. *See, e.g., Rosario v. Camacho*, 2001 MP 3 ¶ 64 (finding that a dismissal for lack of standing is not an adjudication on the merits). Here, the probate court found Norberto was of Northern Marianas Descent ("NMD"), which is a substantive determination. John concedes he was allowed to argue the issue "extensively" in the probate proceeding. Pet. at 8. The brevity of the order does not alter the nature of its adjudication or render the decision less final or substantive.

### *ii. We did not misapprehend the law in analyzing the court's decision as issue preclusion.*

¶ 20    John argues that we misapplied issue preclusion where the court relied on res judicata. However, as we explained, courts often interchangeably use the term "res judicata" to refer to either issue or claim preclusion. *Pangelinan*, 2024 MP 5 ¶ 15 n.5. The trial court's order found that the quiet title claim was barred based on several earlier court decisions. There were multiple avenues by which we could have analyzed whether John's case could be dismissed based on preclusion, but only one route is necessary for preclusion to apply. The trial court based its decision, in part, on the September 20, 2016 order finding that Norberto had NMD status. Appendix "F" at 9. Because the quiet title action relies on the argument that Norberto is not NMD, an issue already litigated and decided in the probate case, issue preclusion was the most efficient doctrinal framework for analysis. Moreover, we reviewed the dismissal for preclusion de novo, affording the trial court's analysis no deference. *Pangelinan*, 2024 MP 5 ¶ 15.

### *iii. We did not misapprehend the law in finding that the probate court's decision was final and on the merits.*

¶ 21    John argues that the probate court's ruling on Norberto's NMD status could not serve as the basis for issue preclusion because it was on appeal when the court dismissed his quiet title claim. However, as we clarified in our opinion, a decision is final and on the merits when it represents the last word of the *rendering* court, not the appellate court. *Id*. ¶ 23. Here, the probate court was the judicial body that rendered the decision that precluded John's later quiet title claim on the same issue. In this way, whether the issue was on appeal with this

---

3    As with John's prior filings, the petition for rehearing is difficult to follow, bordering on incomprehensible. The arguments are nearly impossible to parse in a meaningful way. The issues addressed in this order reflect our good-faith effort to understand and interpret the fairest meaning of the arguments and consider them as generously as possible. *See In re Tudela*, 2023 MP 11 ¶ 17 n.4 (applying our best efforts to understand the arguments submitted by a pro se appellant).

court does not affect whether it was final and on the merits for issue preclusion. Whether something is final and on the merits refers to its appealability. *Id.* (stating that the third factor for determining whether a decision is final and on the merits is whether it is subject to appeal or was, in fact, reviewed on appeal). To find that a decision cannot be final and on the merits unless the appeal has concluded and a mandate has been issued would be paradoxical in light of our test being, in part, about whether the decision is subject to appeal.

### iv. We did not overlook that the September 20, 2016 order did not determine Appellees' status when we affirmed the application of issue preclusion.

¶ 22     John argues that because the September 20, 2016 order by the probate court did not determine who Norberto's heirs were or whether they were NMD, the decision was not final and on the merits for issue preclusion because his quiet title counterclaim challenges Appellees' NMD status and ability to hold long term interest in land. He argues this means the two issues were not identical and issue preclusion was improper. He is incorrect. The probate court did not determine heirs until a later order and probate courts do not, as a matter of course, make determinations as to NMD status unless the issue has been raised. *See Id.* ¶¶ 15–38. However, the dispositive issue was Norberto's NMD status, not the status of his heirs. As we explained, the counterclaim relied on the assertion that Norberto was not NMD. That precise issue was decided by the probate court in its order on September 20, 2016. It is irrelevant that the court did not address the heirs or their status at that stage. He cannot relitigate the foundational predicate of Norberto's NMD status now.

### v. The counterclaim's allegations, if taken as true, had no bearing on whether the court properly dismissed the claim based on issue preclusion.

¶ 23     John argues that under Commonwealth Rule of Civil Procedure Rule 12(b)(6), the court must accept as true his allegations that Appellees were not NMD. Because it did not, the trial court should not have dismissed his claim. This is a misapprehension of the law. The requirement that a court considering a motion to dismiss take all allegations as true in the complaint relates to whether the party has failed to state a claim upon which relief can be granted. *See Govendo v. Micronesian Garment Mfg., Inc.*, 2 NMI 270, 283 (1991). Here, it does not matter whether John's quiet title action stated a claim upon which relief could be granted because the court dismissed based on issue preclusion, not for failure to state a claim. *Pangelinan*, 2024 MP 5 ¶ 10.

### vi. We did not overlook that probate court decisions do not typically determine ownership where title is contested.

¶ 24     John argues that issue preclusion based on the probate court's order regarding Norberto's status was not appropriate, and that Appellees should have brought a quiet title action instead because a probate proceeding "identifies heirs and distributes what interest the decedent had in the property, but does not determine ownership in cases where title is contested." Pet. for Rehearing at 12 (quoting *Rosario v. Camacho*, 2001 MP 3 ¶ 51). However, the issue here is not ownership—it is Norberto's NMD status. The probate court did not resolve a title

dispute; it ruled on whether Norberto was of Northern Marianas Descent. That question became central only because John raised it and was allowed to fully litigate it in probate. John's counterclaim was dismissed not because of an earlier determination of ownership of the land, but because of an earlier determination of Norberto's NMD status, without which John's counterclaim could not survive. Appellees were not required to initiate a separate quiet title action to benefit from the preclusive effect of that determination.

### C. The counterclaim allegations did not establish that Appellees lacked standing to sue for abuse of process.

¶ 25    John's final contention is that Appellees lacked standing to bring an abuse of process claim because he had alleged that Appellees could not lawfully hold long term interest in land. He argues the court should have accepted that allegation as true and concluded Appellees had no standing. As explained above, that standard requirement applies when determining whether the party has stated a claim upon which relief can be granted. *Supra* ¶ 24. Even if we were to presume the truth the allegations that Appellees could not hold title, this would not affect their standing to sue for abuse of process. Their abuse of process claim was based on conduct occurring during probate proceedings—when title to the land was still vested in the estate of Norberto, not in the Appellees. John's suggestion that his later-filed quiet title counterclaim somehow retroactively divested Appellees of title to land they did not yet have when he abused process does not make sense. One need not have a successful claim in probate to be subjected to abuse of process during a probate proceeding.

### IV. CONCLUSION

¶ 26    For the foregoing reasons, we DENY Appellant John S. Pangelinan's petition for rehearing.


SO ORDERED this 25th day of June, 2025.


/s/_____
PERRY B. INOS
Associate Justice


/s/_____
ROBERT J. TORRES, JR.
Justice Pro Tempore


/s/_____
WESLEY M. BOGDAN
Justice Pro Tempore

COUNSEL

John S. Pangelinan, Saipan, MP, Appellant, Pro Se.

Janet H. King, Saipan, MP, for Appellees.

*NOTICE*

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, or email Supreme.Court@NMIJudiciary.gov.*